UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN H. SHEPPARD,
o/b/o himself and all other similarly situated,

    **Plaintiffs,**

vs.                                                              Case No. 8:11-cv-02043-T-27TGW

HILLSBOROUGH COUNTY
SHERIFF'S OFFICE,

    **Defendant.**
_____/

## ORDER

**BEFORE THE COURT** is Plaintiffs' Motion for Attorneys' Fees and Related Costs (Dkt. 173), to which Defendant responded in opposition (Dkt. 182).[1] With leave of Court, Plaintiffs filed a reply (Dkt. 203). Upon consideration of the pleadings and evidence filed in support, the motion (Dkt. 173) is GRANTED *in part*. Plaintiffs are entitled to $82,834.31 in attorneys' fees and $6,061.68 in taxable costs.

### *Introduction*

Under the FLSA, courts "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Determining entitlement to attorneys' fees in FLSA claims entails a three-step process: (1) determine whether the plaintiff "prevailed" in the litigation; (2) calculate the "lodestar," which is the number of hours reasonably expended on legal work multiplied by a reasonable hourly rate for the services; and (3) adjust the lodestar to account for the results obtained by the plaintiff.

---

[1] Defendant's original response (Dkt. 178) was stricken (Dkt. 180) for failure to comply with the page limits set forth in the Local Rules. *See* M.D. Fla. L.R. 3.01(b).

*Atlanta Journal & Const. v. City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1289 (11th Cir. 2006). "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). There is no dispute that eighteen opt-in Plaintiffs "prevailed" in this action. Defendant contests the lodestar calculated by Plaintiffs and the requested multiplier of 1.25.

### *Hourly Rates*

A reasonable hourly rate is the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). The fee applicant must provide the court with detailed evidence about the reasonable hourly rate. *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). The Court is "itself an expert" on the reasonableness of hourly rates and "may consider its own knowledge and experience on the topic." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000).

Attorneys Tanya O'Connor and Lowell Kuvin both submit that $300 per hour is a reasonable hourly rate for their work. O'Connor has 17 years of legal experience, having served as a staff attorney at the Second District Court of Appeal for 8 years. She had been in private practice for the past 9 years (Dkt. 173-4 ¶ 5). She concentrates in family law, medical malpractice, personal injury, and appellate advocacy, and admits that she has "limited experience" in labor and employment law (*id.* ¶ 6). This was O'Connor's first conditional class FLSA case, as she acknowledged during the hearing on Defendant's motion to disqualify Plaintiffs' counsel (*see* Dkt. 182-1 at 35), which

2

may explain some of the procedural and substantive missteps by Plaintiffs.[2]

Kuvin has been a member of the Florida Bar since 2008 and has approximately 5 years of experience litigating labor and employment matters, primarily discrimination and wage-and-hour litigation, including individual and collective FLSA actions (Dkt. 173-5 ¶¶ 6-8). Kuvin avers that he has handled "several hundred cases for plaintiff-employees or defendant-employers" arising under various labor laws, although he does not specifically identify any of those matters (*id.* ¶ 7).

Plaintiffs also submit the affidavits of Earl M. Johnson, Jr. (Dkt. 175) and Carlos Leach (Dkt. 174-1). With regard to the reasonableness of the hourly rates requested, Leach avers that $300 per hour is a reasonable hourly rate for Kuvin "[b]ased on my first-hand knowledge of Mr. Kuvin's experience and reputation in the community as a plaintiff's employment law litigator" and based on

---

[2]Plaintiffs' procedural and substantive missteps were numerous. Plaintiffs' motion to seal the complaint (Dkt. 2) swept far broader than the privacy interests Plaintiffs argued were implicated by this case and was denied (Dkt. 4). Early in the litigation, Plaintiffs moved for a default, which the Clerk entered (Dkts. 14, 15). When Defendant moved to set aside the default, however, it was revealed that Plaintiffs never served Defendant, even though Plaintiffs' counsel filed an affidavit attesting that Defendant had been served (*see* Dkt. 20). The default was promptly set aside (Dkt. 25). Defendant then moved to strike immaterial, impertinent, and scandalous material from the Complaint, including allegations that Defendant's overtime policies and practices contributed to the death of children (Dkt. 23). Plaintiffs never responded, and the motion was granted (Dkt. 26).
    Plaintiffs then moved for conditional certification of the action and to facilitate notice to potential class members (Dkt. 29). The motion requested an order conditionally certifying all Child Protective Investigators and Trainees, despite the fact that Plaintiffs did not submit any evidence regarding Trainees and did not even mention Trainees in the Complaint (*see* Dkt. 43). The motion also requested a conditional class that did not account for the proper temporal scope of the class (*id.*).
    Discovery was also problematic. Plaintiffs repeatedly failed to timely respond to Defendant's discovery requests, even after multiple extensions of time. For example, Plaintiffs' responses to Defendant's first interrogatories and first requests for production were substantially delayed. In the most egregious cases, Plaintiffs served responses of opt-in Plaintiffs several weeks after those opt-in Plaintiffs signed their verification pages. Plaintiffs also failed to timely respond to Defendant's first request for admissions, which were originally served on September 18, 2012 (*see* Dkt. 86). Even though Plaintiffs eventually served the responses on December 7, 2012, Plaintiffs did not move to withdraw the deemed admissions until May 9, 2013 (Dkt. 86).
    According to Defendant, opt-in Plaintiffs Crystal Woods, Valerie Lance, Adrienne Winn, and Tonya Compbell failed to attend their depositions (*see* Dkts. 92, 92-1, 92-3). These opt-in Plaintiffs later withdrew their consents to join. Opt-in Plaintiff Charlotte Bright refused to appear for her properly noticed deposition, and the Magistrate Judge granted Defendant's motion to compel Bright to appear and ordered Plaintiffs to pay the court reporter fee for Bright's non-appearance (*see* Dkts. 81, 85). Finally, on the day before the discovery cut-off, Plaintiffs served amended Rule 26 disclosures and an amended witness list with thirteen names not previously disclosed (*see* Dkt. 92-5). These witnesses were stricken due to the late disclosure (Dkt. 132).

Leach's familiarity with the Central Florida legal community (*id.* ¶¶ 7-8). Neither affidavit addresses the reasonableness of O'Connor's hourly rate. Plaintiffs also list 29 orders from the Middle District of Florida approving attorneys' fees in FLSA cases at various rates. This string citation does not provide any analysis of the skills, experience, and reputation of the lawyers in those cases, however, as compared to O'Connor and Kuvin.

Other than Leach's affidavit addressing Kuvin's hourly rate[3] and the citation to cases from the Middle District of Florida, Plaintiffs do not submit any evidence addressing the reasonableness of the hourly rates, let alone the "detailed evidence" required by the Eleventh Circuit. *See Barnes*, 168 F.3d at 427. The Court is therefore left to determine whether $300 is a reasonable hourly rate based on its own experience and knowledge of the market.

As for O'Connor, despite her 9 years of experience litigating cases, she has never handled a FLSA collective action and therefore lacks the skill, expertise, and reputation necessary to justify a $300 rate. A more appropriate rate for an attorney with her general litigation experience, but lack of experience in FLSA cases, is $225. Kuvin, on the other hand, practices exclusively in the area of labor and employment law and has been involved in "hundreds" of such cases. Nevertheless, he has only 5 years of experience total, which cannot support an hourly rate of $300. Given his lack of general litigation experience, notwithstanding a concentration in labor and employment, a reasonable hourly rate for Kuvin is also $225.

### *Hours Reasonably Expended*

"[T]he fee applicant bears the burden of establishing entitlement to an award and

---

[3] Defendant argues that the affidavit of Leach should not be considered because Leach has a substantial conflict of interest as a colleague of Kuvin, and because he would substantially benefit from an order establishing a prevailing market rate for a 5-year attorney at $300 per hour. Defendant has presented no evidence of this conflict of interest and argument of counsel cannot establish facts. In any event, Leach's affidavit, without other evidence, does not rise to the level of "detailed evidence" required to establish a reasonable hourly rate and is therefore not determinative.

documenting the appropriate hours expended . . . ." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Nevertheless, "objections and proof from fee opponents concerning hours that should be excluded must be specific and reasonably precise." *Barnes*, 168 F.3d at 428. Fee applicants are required to exercise billing judgment when applying for attorneys' fees. *Hensley*, 461 U.S. at 434. To that end, they must exclude from their fee applications excessive, redundant, or otherwise unnecessary hours, or other hours that would be unreasonable to submit to a client and therefore to one's adversary. *Barnes*, 168 F.3d at 428. If fee applicants do not exercise billing judgment, courts are obligated to do it for them by "cut[ting] the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise necessary." *Id.* When the number of hours claimed is unreasonably high, a court may either conduct an hour-by-hour analysis or reduce the requested hours by an across-the-board percentage. *Bivens v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008).

Plaintiffs assert that O'Connor and Kuvin reasonably expended 258.9 hours and 252.91 hours, respectively. Defendant argues that these numbers should be reduced by 16.14 hours (14.54 for Kuvin and 1.6 for O'Connor) for time spent on the cases of opt-in Plaintiffs who withdrew from the lawsuit or did not accept an offer of judgment, and by 13.8 hours for time spent on clerical matters. Plaintiffs did not address these proposed reductions in their Reply.

Upon careful review of the timesheets submitted by Kuvin and O'Connor, as well as the hours contested by Defendant, I agree that the total number of hours expended on this case should be reduced by 16.14 hours for time spent on behalf of opt-in Plaintiffs who withdrew from the lawsuit or did not accept an offer of judgment (*see* Dkt. 182-2). Although I also agree that purely clerical work is not compensable,[4] the only purely clerical work submitted is 4.8 hours on July 16-18,

---

[4] *See Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1334 (M.D. Fla. 2002).

2013 (*see* Dkt. 182-2 at 3; Dkt. 173-1 at 15).

After those reductions, the number of hours reasonably expended on this litigation by Plaintiffs' counsel total 490.87. Multiplied by the reasonable hourly rate of $225 for each attorney, the base lodestar for attorneys' fees is $110,445.75.

### *Adjustment of the Lodestar*

Both parties argue that the lodestar should be adjusted. Plaintiffs argue that the lodestar should be increased 50% by a lodestar multiplier of 1.5. Defendant, on the other hand, argues that the lodestar should be reduced 25% by a lodestar multiplier of 0.75.

Determining whether the lodestar should be adjusted requires consideration of the twelve *Johnson* factors: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989); *see Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

The parties litigated this case for approximately 22 months. The 490.87 hours spent by Plaintiffs' counsel is evidence of the substantial time and labor required to resolve this case. Some of that time could and should have been avoided, however, if the case had been prosecuted in a more efficient and circumspect manner. Troubled by the manner in which the case had been prosecuted, the Court reviewed the circumstances of this litigation at the hearing on Defendant's motion to disqualify Plaintiffs' counsel:

And as we've seen in this case, Ms. O'Connor, rather than just defend your actions, you accuse the other side of something. And that doesn't solve the problem and it certainly doesn't assist me in trying to resolve these disputes.

There are many, many more cases than this involving much more complex and difficult subject matters that do not have discovery disputes like these.

I'm going to read something from one of the filings. Quote, "Untimely discovery responses and noncompliant clients are routine challenges in any case and certainly present even greater challenges in multi-party/selective class litigation," closed quote.

You are plainly wrong. I don't know the basis of that information and knowledge since you've never handled one of these cases before. But it's an affront to the Court and to those who practice in this court to suggest that that is a routine matter.

. . . .

When I began this hearing, I alluded to the fact that I had spent the better part of the morning reading this file. Problems started in this case virtually from the get-go, when the plaintiff moved for a default against the defendant without having affected [*sic*] service, as contemplated by Rule 4, demonstrating a fundamental misunderstanding of the manner in which the Sheriff of Hillsborough County is required to be served.

That resulted in litigation about that, unnecessary litigation, in my view, requiring a motion to set aside a default that was granted.

The next thing that caught my attention, and refresh my memory, was the defendant's motion to strike certain allegations in the complaint, allegations which on their face were scandalous and impertinent and having nothing to do with the merits of this case.

Interestingly, there was no response to the motion on behalf of the plaintiffs. And on February 15th, I entered an order granting the defendant's motion to strike.

Then I recalled the motion for – by the plaintiff to conditionally certify this class, which was granted in part, in part only because the motion itself proposed the wrong temporal scope, vis a vis the statute of limitations, and included trainees in the proposed class, which had not been mentioned in the complaint.

And that was resolved, only to see the plaintiff file a motion to compel and seek sanctions which gave birth to a whole other round of litigation.

Ultimately, the motion was granted to the extent – not the sanctions, but to the extent that the defendant, as I recall, was required to provide the information concerning potential opt-in plaintiffs.

. . . .

7

> My point in reviewing the history of this case is that the tone for this litigation was set early on with a fundamental misunderstanding about the default rules, a somewhat haphazard approach to this litigation by including scandalous and impertinent allegations in the complaint, and a less that careful motion for conditional certification. I should say less than carefully drawn motion. The proposed notice was correct, but the motion itself had a couple of errors.
> Discovery was extended on the defendant's motion without any objection from the plaintiff, the first glimmer of hope that there might be some cooperation in terms of discovery in this case.
> But then started the series of plaintiff's [sic] failing to appear at depositions, inability to schedule depositions after attempting to coordinate, and here we are.
> A pattern of untimely compliance with discovery on the part of the plaintiff, a violation of the disclosure rules with respect to these 13 witnesses, three of which there's absolutely no excuse for; essentially, taking the position that the plaintiff had no intention of complying with Judge Wilson's order, which is troublesome.
>
> . . . .
>
> In light of the numerous instances of late discovery, untimely responses, lack of response to motions and lack of response to requests for admissions which Judge Wilson has now addressed, I will keep a watchful eye over this case.

(Dkt. 182-1 at 40-45).

In short, Plaintiffs' counsel's prosecution of this case demonstrated procedural and substantive errors and an uncooperative approach, which caused this case to be drawn out to a greater degree than necessary and caused attorneys from both sides to expend many more hours than necessary.

Although not a run-of-the-mill FLSA litigation and involving the coordination of opt-in Plaintiffs, this case was not particularly novel or complex. Indeed, the Court referenced that in commenting on the difficulties that persisted in the litigation. In the same vein, while prosecution of this case certainly required the skill expected of members of the Bar who undertake such litigation, it did not require any special degree of skill beyond what is normally expected.

As for *Johnson* factors 4 through 7, Plaintiffs have not presented any evidence allowing an

evaluation of the preclusion of other employment, the customary fee in such cases (other than the cases cited in support of an hourly rate of $300), whether the fee was fixed or contingent, or whether any time limitations were imposed by the client or circumstances. But considering the duration of the litigation, it is unlikely that any particular time limitations were imposed on Plaintiffs' counsel.

Plaintiffs' counsel recovered an average of $7,557 per opt-in Plaintiff, for an aggregate recovery of $136,026. While Defendant does not contest the substantial nature of this recovery, it must be considered along with the six opt-in Plaintiffs in the case at the time of settlement who were dismissed without recovery due to other Plaintiffs accepting Defendant's offers of judgment.[5]

Overall, the *Johnson* factors do not support a multiplier of the lodestar. Although the litigation was long and the recovery was substantial, those factors are tempered by an inconsistent and problematic prosecution of the case and a lack of recovery for some Plaintiffs. Instead, the haphazard prosecution and lack of recovery warrant a reduction in the lodestar. I find that a 25% reduction of the lodestar is sufficient to account for troublesome conduct that spawned further work and no recovery for one-fourth of the opt-in Plaintiffs, in light of the number of Plaintiffs, the duration of the litigation, the substantial aggregate recovery, and the other *Johnson* factors.

### *Motion to Tax Costs*

Prevailing FLSA plaintiffs are entitled to tax those costs enumerated in 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987). Courts have limited discretion in awarding costs and are permitted to tax only those items specified in § 1920. *Id.* When challenging whether costs are properly taxable, the burden lies with the challenging party. *Ass'n for Disabled Americans, Inc. v. Integra Resort Mgmt., Inc.*, 385 F. Supp. 2d 1272, 1289 (M.D. Fla. 2005). Defendant correctly argues that Plaintiffs are not entitled to tax mediation expenses, postage,

---

[5] There is no evidence on the record addressing the remaining *Johnson* factors.

legal research, office supplies, expenses incurred for Jay Ligatti, "Topical Surveillance & Investigation" expenses, or the fees paid to Magaly Ortega. *See Crawford*, 482 U.S. at 442 (only costs for *court-appointed* experts may be taxed); *Guetzloe Group, Inc. v. Mask*, No. 6:06-cv-404-Orl-22JGG, 2007 WL 2479335, at *4 (M.D. Fla. Aug. 28, 2007) (postage, legal research, and mediation costs not taxable under § 1920); *Pelc v. Nowak*, No. 8:11-cv-79-T-17TGW, 2013 WL 3771233, at *5 (M.D. Fla. July 17, 2013) ("Failure to provide supporting documentation verifying the costs incurred and the services rendered can be grounds for denial of costs."). Defendants do not object to the remaining costs. Subtracting the contested costs that are not authorized by § 1920 yields taxable costs in the amount of $6,061.68.

## *Conclusion*

Accordingly, Plaintiffs' Motion for Attorneys' Fees and Related Costs (Dkt. 173) is **GRANTED** *in part*. Plaintiffs are entitled to an award of attorneys' fees in the amount of **$82,834.31**, and to taxable costs in the amount of **$6,061.68**. The Clerk is directed to **ENTER** judgment in favor of Plaintiffs to that effect.

**DONE AND ORDERED** this 20th day of November, 2013.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record